**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| UNITED STATES OF AMERICA | 3:11-cr-105-JDR |
|---|---|
| Plaintiff, | |
| vs. | **ORDER REGARDING MOTION TO DISMISS** |
| MICHAEL B. CRAWFORD, | (Docket No. 3) |
| Defendant. | |

Defendant **Michael Crawford** moves to dismiss the charges against him on grounds that he did not violate the terms of his special use permit and there is no legal definition of a "cubby set," which is a term of varied definition and subject to arbitrary and capricious enforcement. Docket 3. The government filed an opposition at Docket 9. An evidentiary hearing was conducted on

Order on Motion to Dismiss

December 29, 2011. Docket 16. For reasons stated below, the court concludes that the Motion to Dismiss lacks merit and is hereby DENIED.

This case was initiated by the issuance of two violation notices: Violation Notice No. 0735791 charging Crawford with attempting to trap wolverine after the season closed, and Violation Notice No. 0735788, charging that he used a cubby set after the close of lynx season. These tickets were superseded by an Information filed November 18, 2011. Docket 1.

Count 1 of the Information charges trapping out of season, namely, that on or about March 1, 2011, within the Alaska National Wildlife Refuge in the Mystery Creek Road System within the boundaries of the Kenai National Wildlife Refuge, Crawford did attempt to trap wolverine after the wolverine trapping season closed, on the last day of February 2011, in violation of 16 U.S.C. § 668dd, 50 C.F.R. § 36.32(c)(1)(i), 5 AAC 84.270(14). Count 2 of the Information charges that on the same date Crawford did not abide by the terms of his National Wildlife Trapping Permit, Permit No. KEN 11-T23: (1) by attempting to trap wolverine out of season in violation of Special Condition No. 1 of his permit; (2) failing to make every effort to prevent the capture of non target species in violation of Special Condition No. 6 of his permit; and (3) operating a cubby set after the lynx season closed on February 15, 2011 in violation of Special Condition specific to the Kenai National Wildlife Refuge No. 7 of his Permit, in violation of 16 U.S.C. § 668dd, 50 C.F.R. § 26.22(b).

The first ground in the Motion to Dismiss asserts that the defendant did not violate the terms of his special use permit as alleged. This ground raises factual issues which are reserved for the trial of the case. There is no summary judgment in a criminal case and this ground does not raise an issue that is properly decided on a pretrial motion to dismiss. Accordingly, defendant's Motion is DENIED as to the request for dismissal on ground one.

The second ground of the Motion to Dismiss, while not dispositive of Count 2 of the Information, does place in issue whether the government can rely upon the alleged violation of Special Condition No. 7 of the Permit issued to Crawford. Special Use Permit No. KEN 11-T23 contains a set of ten special conditions, plus eight special conditions specific to the Kenai National Wildlife Refuge and four special conditions for beaver trapping on the Kenai National Wildlife Refuge. It also contains a notice regarding marten and fox trapping.

Special Condition No. 7 of those conditions specific to the Kenai National Wildlife Refuge reads as follows: "Cubby and flag sets are not allowed when the lynx season is closed." Crawford maintains that the terms "cubby and flag sets" is subject to arbitrary and capricious enforcement because there "are no definitions of these terms in the federal regulations or statutes[, or] or in Alaska Statutes or regulations." Memorandum in Support of Motion to Dismiss, Docket 4, p.2. Crawford further argues that the reference to "cubby and flag sets" is

ambiguous because it is not clear whether the special condition prohibits "cubby sets" and "flag sets", or only a setup that includes both a cubby and a flag. Viewing this issue from the perspective of a motion to dismiss, the court considers the context of the prohibited conduct which is contained in the special use permit for trapping. The purpose for the limitations on trapping, is to prevent over trapping of certain species of fur bearing animals. The court concludes that Special Condition No. 7 provides adequate notice that cubby sets, flag sets, and cubby and flag sets are prohibited during the closed season.

Crawford argues that the challenged terms should have read "cubby or flag sets" if the language was meant to prohibit just a cubby set. Alternatively it might have been clearer for the language to read "cubby and/or flag sets." Nevertheless, to read Condition No. 7 as prohibiting only trapping sets that include both a cubby and a flag but not a cubby set without a flag or flag set without a cubby, would clearly thwart the conservation purpose of the limitation as contained in the applicable regulations, special use permit and mandatory snaring seminar imposed by the permit. Through pretrial discovery the government has advised Crawford for purposes of trial preparation that it intends to present proof that he had a cubby set and not a cubby and flag set that violated his permit.

The government argues that Special Condition No. 7 sufficiently defines the conduct prohibited without being arbitrary and vague. The Ninth Circuit Court

of Appeals holds that in an as-applied challenge, outside the context of the First Amendment, "a statute is void for vagueness (and thus unconstitutional under due process) if the statute (1) does not define the conduct it prohibits with sufficient definiteness and (2) does not establish minimal guidelines to govern law enforcement. United States v. Wyatt, 408 F.3d 1257, 1260 (9th Cir. 2005). A criminal statute "cannot be so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." United States v. Hockings, 129 F.3d 1069, 1072 (9th Cir. 1997). The Court of Appeals further instructs that where the statute is ambiguous, "the rule of lenity must be applied to restrict criminal statutes to conduct clearly covered by those statutes." Hockings, at 1072.

The government acknowledges that under the rule of lenity, when a criminal statute is ambiguous, courts interpret the statute in favor of the defendant. Wyatt, at 1262. However, the United States Supreme Court has rejected the contention that the rule of lenity is invoked merely because a different reading of the statute is possible. In Moskal v. United States, 498 U.S. 103, 108 (1990), the Court stated:

> Because the meaning of language is inherently contextual, we have declined to deem a statute 'ambiguous' for purposes of lenity merely because it was possible to articulate a construction more narrow than that urged by the Government . . . . Instead, we have always reserved lenity for those situations in which a reasonable doubt

persists about a statute's intended scope even after resort to 'the language and structure, legislative history, and motivating policies' of the statute.

Additionally, "[p]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." Ward v. Rock Against Racism, 491 U.S. 781, 794 (1989).

Count 2 contains citations to two legal sources. The first is 16 U.S.C. § 668dd. This is the catch-all general provision governing the National Wildlife Refuge System. Subsection (a) governs refuge lands in Alaska. The second, 50 C.F.R. § 26.22(b) General Exception for Entry, covers exceptions for entry in a national wildlife refuge (of which the Kenai Refuge is a part). The relevant portion of the Code is as follows:

> (b) A permit shall be required for any person entering a national wildlife refuge, unless otherwise provided under the provisions of subchapter C. The permitee will abide by all the terms and conditions set forth in the permit.

The C.F.R. Regulations in Title 50 (Wildlife and Fisheries) that apply to The National Wildlife Refuge System contain some relevant Regulations.

50 C.F.R. § 25.31, General provisions (Part 25 relates to Administrative Provisions; Subpart C relates to Public Notice) provides:

> Whenever a particular public access, use or recreational activity of any type whatsoever, not otherwise expressly permitted under this subchapter, is permitted on a national wildlife refuge or where public access, use, or recreational or other activities previously permitted are curtailed, the

11-cr-105-JDR CRAWFORD @3 ORDER on Motion to Dismiss_mtd.wpd                              6

Order on Motion to Dismiss

> public may be notified by any of the following methods, all of which supplement this Subchapter C:
>
>> (a) Official signs posted conspicuously at appropriate intervals and locations;
>> (b) Special regulations issued under the provisions of § 26.33 of this Subchapter C;
>> (c) Maps available in the office or the refuge manager, regional director, or area director,
>> (d) *Other appropriate methods which will give the public actual or constructive notice of the permitted or curtailed public access, use, or recreational activity.* (Emphasis added).

Section (d) is notable because the Special Use Permit requires attendance at a seminar by the permitee.

50 C.F.R. § 26.33, Special Regulations (Part 26 relates to Public Entry and Use; Subpart C regards Public Use and Recreation) states:

> (a) Special regulations shall be issued for public use, access, and recreation within certain individual national wildlife refuges where there is a need to amend, modify, relax or make more stringent the regulations contained in this subchapter C. The issued special regulations will supplement the provisions in this part 26.
> (b) Special recreational use regulations may contain the following items:
>
>> (1) Recreational uses authorized.
>> (2) *Seasons, period, or specific time of use.*
>> (3) Description of areas open to recreation.
>> (4) *Specific conditions or requirements.*
>> (5) Other provisions.
>> (6) Special regulations for public use, access, and recreation are published in the daily issue of the Federal Register and may be codified in the Code of Federal Regulations. They shall be issued in compliance with procedures contained in the Department Manual. (Emphasis added).

In accordance with this section of the C.F.R. the Government is required to give notice of what types of traps can be used and when and what constitutes a cubby set. How the agency provides that notice is not limited to language in statutes and regulations.

The applicable criminal statute provides that "a permit shall be required for any person entering a national wildlife refuge, unless otherwise provided under the provisions of sub-chapter C. The permitee will abide by all the terms and conditions set forth in the permit." 50 C.F.R § 26.22(b). The regulation requires the permitee to abide by all the terms and conditions set forth in the permit. A permitee is thus expected to learn the terms and conditions of the permit imposed upon him to lawfully enter the national wildlife refuge. The regulation or permit need not define a word or terms that are generically understood without a special definition.

<u>Webster's Third New International Dictionary Unabridged</u> (2002) at page 550 defines "cubby" as "a confined space (as for hiding)"[1] The dictionary also indicates that cubby may refer to a "cubby pen." A "cubby pen" is defined in the dictionary as a small baited enclosure (as of upright sticks or sometimes stones) with traps so arranged that an animal cannot reach the bait without being caught by a trap."

---

[1] A copy of this Dictionary is found in the Court Library in the James F. Fitzgerald Federal Building and U.S. Courthouse in Anchorage.

11-cr-105-JDR CRAWFORD @3 ORDER on Motion to Dismiss_mtd.wpd          8

Order on Motion to Dismiss

At an evidentiary hearing on the motion to dismiss, Gary Titus, Refuge Officer, explained the permitting process which requires the permitee to attend an orientation class that last three to four hours. The course covers topics such as trap preparation, types of traps for the Kenai Peninsula and special use permits. The officer's presentation at the seminar provides pictures through a Power Point depicting and describing a cubby set. Refuge officers use the definition of a cubby as a natural or constructed tunnel shape with one entrance with some type of trap set at the entrance. Transcript of Evidentiary Hearing, p.29

A "flag set" refers to the use of an item to attract the animal to the entrance of the set. Cubby sets and flag sets may be used separately to trap lynx. A cubby has an entrance with a tunnel to lead the animal to the bait. The cubby may be naturally formed or man made. Although the terms "cubby set" and "flag set" may not be known to the average person, a reasonably intelligent permitee would be familiar with the terms whether learned from literature, mentors, or orientation seminars.

Because a cubby set may vary greatly in its components, size and shape they are often discussed through illustrations or pictures. For example the Alaska Trappers Manual created in a joint effort by the Alaska Trappers Association and the Alaska Department of Fish and Game (Exhibit 3 of the Evidentiary Hearing) describes a "baited snare set" for lynx on page 60, a conibear style cubby set for

lynx, marten or wolverine on page 61, a leghold cubby set for lynx, marten or wolverine on page 62, and a "cubby set" with a top up pole for marten on page 68. Each of these pages contain an illustration of a cubby. The manual states that "snares are very effective for lynx even at a cubby." It then discusses how to build a cubby. Page 61 states that "cubby sets are used to catch a variety of fur bearers." It discusses the main idea behind a cubby and the illustration depicts what is called an "attractor" to hang above or near the cubby. The manual provides information such as the style of traps to use for particular fur bearing animals and warns against using live sticks because they attack snow shoe hares. Page 62 illustrates a cubby with an attractor that is essentially depicted as a ribbon like attractor above the set.

Another publication that depicts and describes trap sets depicting cubbies is the <u>Yukon Kuskokuim Region Trappers Handbook</u> (Exhibit 4 to the Evidentiary Hearing). On Page 36, Section IV, of this handbook, it describes making a cubby under bushy spruce to protect from the weather when setting up a trap for lynx or wolverine.

It was incumbent upon Crawford as permitee to abide by the terms and conditions of his permit. A first time permitee could learn about the concept and purpose for trapping using a cubby set by attending the mandatory seminar. The evidence indicates that Crawford has in the past been an instructor at one or more of these seminars. As used in the Special Use Permit the phrase "cubby and flag

sets" is not void for vagueness as applied to Crawford. In his permit the question whether the permitee has attended the mandatory seminar is answered in the affirmative. Permit No. KEN 11-T23, p.2.

A cubby set is a form of trapping generally known to trappers and used in literature addressing the trapping of fur bearing animals. The term is not so vague as to provide that persons of common intelligence must necessarily guess at its meaning or understand what conduct is prohibited with sufficient definiteness. In order to prevail on Count 2 at trial under the theory that Crawford violated Special Condition No. 7, the government must prove beyond a reasonable doubt that Crawford used a cubby set after the close of lynx season which was prohibited by his Special Use Permit.

**Summary**

Because the violation of a permit on the Kenai National Wildlife Refuge constitutes a criminal violation the void for vagueness doctrine applies to the terms of the permit. The defendant has not met his burden of showing that Special Condition No. 7 of his permit is impermissibly vague as applied to him. Rojas-Garcia v. Ashcroft, 339 F.3d 814, 822 (9th Cir. 2003). The mere fact that a cubby set can be formed in many different ways does not make the term ambiguous. No where else in the permit or regulations is there a suggestion that any form of cubby sets are

allowed out of lynx season. Wherefore, the Motion to Dismiss, Docket 3 is hereby DENIED.

DATED this 6th day of January, 2012, at Anchorage, Alaska.

 /s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge

11-cr-105-JDR CRAWFORD @3 ORDER on Motion to Dismiss_mtd.wpd    12

Order on Motion to Dismiss